# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

DANAN GABALDON,

    Plaintiff,

v.                                                                                      Civ. No. 17-267 KG/GJF

BERNALILLO COUNTY SHERIFF'S OFFICE et al.,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court[1] on the following motions: (1) "County Defendants' Motion for Summary Judgment" ("MSJ") [ECF No. 37], filed August 9, 2018; (2) "County Defendants' Unopposed Motion to Stay Proceedings Pending Outcome of Defendants' Motion for Summary Judgment" ("MTS") [ECF No. 42], filed September 6, 2018; and (3) Plaintiff's "Motion to File Amended Pleading" ("MTA") [ECF No. 43], filed September 10, 2018. The motions are fully briefed.

For the reasons that follow, the Court **RECOMMENDS** that: (1) summary judgment be **GRANTED** to Defendants; (2) Plaintiff's state law claim be **DISMISSED WITHOUT PREJUDICE**; (3) Plaintiff's Motion to file Amended Pleading be **DENIED**; and (4) Defendants' Motion to Stay be **DENIED AS MOOT**.

---

[1] U.S. District Judge Kenneth Gonzales referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF No. 24.

## I. BACKGROUND

### A. Factual Background

The following factual history is drawn from the parties' statements of uncontroverted facts and from video evidence. The facts are viewed in the light most favorable to Plaintiff, the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

On the morning of March 3, 2015, a caller reported a suspicious vehicle parked in a residential neighborhood in Albuquerque. Bernalillo County Sheriff's Department dispatched two deputies to investigate, Defendants Hayworth and Madrid, who located a white van matching the description given by the caller. On approach, Defendant Hayworth noticed Plaintiff sleeping in the van and knocked on one of the windows.[2] Awakened by the knock, Plaintiff climbed into the driver's seat and, without acknowledging Defendants Hayworth and Madrid, drove off at a high rate of speed. Defendant Hayworth immediately notified dispatch that the white van fled. To help the deputies locate the fleeing van, dispatch enlisted the help of Albuquerque Police Department's Air One helicopter. With the guidance of Air One, Defendant Hayworth located the van traveling west on Muniz Road. Plaintiff continued down Muniz Road, which becomes Copeland Road, and turned onto a dead-end side street. Plaintiff parked the van in a driveway next to a purple sedan, exited the vehicle along with a female passenger, and appeared to begin attempting to steal the purple car.

At this same time, Defendant Hayworth closed in on Plaintiff's location, exited his vehicle, and gave Plaintiff verbal commands. Ignoring those commands, Plaintiff ran back to the van, quickly reversed out of the driveway, and began fleeing from the deputies a second time. During

---

[2] Plaintiff's complaint and Defendants' Motion for Summary Judgment differ on which Defendant knocked on the window of the van. This factual dispute is immaterial and need not be resolved.

the getaway, and sometime shortly after Plaintiff evaded Defendants Hayworth and Madrid, Deputy Valdez fired shots at Plaintiff's vehicle.[3] Apparently undeterred by the gunfire, Plaintiff continued northbound on Isleta Boulevard, at times exceeding 70 miles per hour and narrowly missing several vehicles, including a school bus in a school zone.

At this time, Deputy Vearde began blocking off an intersection located further north on Isleta Boulevard to ensure no other vehicles crossed in front of Plaintiff. After entering the intersection, Deputy Hayworth drove up on the side of Plaintiff's van and deployed a pursuit intervention technique to force the van into a spin and stall its engine. Once stopped, Plaintiff immediately exited the van and fled on foot. The foot chase abruptly ended when Defendant Hayworth tackled the resisting Plaintiff. Within seconds, five additional deputies converged on them to assist in the arrest. To overcome Plaintiff's resistance, Deputy Hix delivered a "softening blow" to the left thigh and, as a distraction technique, utilized a lateral head displacement to allow deputies to handcuff Plaintiff. Once Plaintiff was restrained, deputies transported him to a local hospital where he was treated for minor injuries and then taken to jail.

**B. Procedural Background**

Plaintiff, a pro se prisoner now in the custody of Lea County Correctional Facility, filed this lawsuit under 42 U.S.C. § 1983. In his complaint [ECF No. 1], Plaintiff alleged that Defendants Valdez, Marinelarena, Valverde, Madrid, Hayworth, and the Bernalillo County Sheriff's Office ("BCSO") violated his Fourth and Eighth[4] Amendment rights. The complaint

---

[3] The video evidence is unclear as to when and where the shots were fired. It is also unclear when Deputy Valdez joined the pursuit of Plaintiff. Both Defendants' and Plaintiff's summary of the events contradict each other, but that factual dispute is also not material.

[4] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U. S. CONST. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment applies only to convicted inmates. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F. 3d 1313, 1320 (10th Cir. 1998). Consequently, because the alleged incident occurred before Plaintiff was a

3

further alleged negligence against all named defendants. Defendant Valdez answered on September 20, 2017, and Defendants Marinelarena, Madrid, Hayworth, and the BCSO answered on November 9, 2017.[5]

Following Defendants' answers, this Court entered a scheduling order and subsequent order setting discovery and motions deadlines. *See* ECF Nos. 21, 23, 25. Approximately seven months into discovery, Defendants brought the current motion for summary judgment and then moved to stay the proceedings pending a rulinokg on the dispositive motion. Plaintiff then moved this Court for leave to amend complaint.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).

The movant has the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v.*

---

convicted inmate, the Court will not address the Eighth Amendment claim. Instead, the Court will confine its constitutional analysis solely to the Fourth Amendment.

[5] The original complaint also sought to name as a defendant "Deputy A. Valverde." *See* ECF No. 1, 1. Defense counsel notified the Court via email that the BCSO does not and did not have a deputy with that surname. It appears to the Court, however, that Plaintiff was actually trying to name "A. Vearde" – not "A. Valverde" – as a defendant in this case. Indeed, in support of the Motion for Summary Judgment, Defendants attached an incident report by Deputy A. Vearde [Defs.' Mot. Summ. J. Ex. C], while hastening to add that Deputy Vearde was not a named litigant in the case. Defs.' Mot. Summ. J. 4 n.4. Although the Court would have preferred defense counsel to make the common sense "Valverde-to-Vearde" connection unilaterally, the Court will not order service on Deputy Vearde because his actions would not subject him to individual liability and his presence or absence in this lawsuit does not otherwise affect this recommendation.

*Catrett*, 477 U.S. 317, 323–24 (1986). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Id.* at 324. Although all facts are construed in favor of the non-movant, the non-movant still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (citation and internal quotation marks omitted).

The Court liberally construes Plaintiff's filings because he is appearing pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (citation and internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

### B. Qualified Immunity

The defense of qualified immunity shields officials from civil liability as long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Qualified immunity also shields officials who have "reasonable, but mistaken beliefs" and operates to protect officials from the law's sometimes "hazy border[s]." Saucier v. Katz, 533 U.S. 194, 205 (2001). In sum, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

5

Because of the burdens of litigation, issues of qualified immunity are best resolved at the "earliest possible stage of litigation." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010). "Once a defendant raises qualified immunity, the plaintiff bears the burden to show that the defendant is not entitled to immunity." *Lincoln*, 880 F.3d at 537 (citing *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005)).

To overcome the defense of qualified immunity, a plaintiff must show that the defendant violated a constitutional or statutory right and that the violated right was clearly established at the time of the alleged unlawful activity. *Lincoln*, 880 F.3d at 537 (internal quotations omitted) (citing *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016)). For the law to be clearly established:

> [t]he contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. And the contours of a particular right are generally only sufficiently clear to put a reasonable official on notice if a plaintiff (1) identif[ies] an on-point Supreme Court or published Tenth Circuit decision, or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.

*Perry v. Durborow*, 892 F.3d 1116, 1122–23 (10th Cir. 2018) (quotations and citations omitted).

"A right is 'clearly established' when every "'reasonable official would [understand] that what he is doing violates that right.'" *Lincoln*, 880 F.3d at 537 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, a court may conclude that a right was clearly established only if it "was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right." *Casey v. West Las Vegas Independent School Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (emphasis added). But courts cannot define the relevant constitutional right "at a high level of generality[;]" rather, the analysis

must determine whether the "clearly established law . . . [is] particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation omitted). Although, this inquiry "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)) (internal quotations omitted). "[T]he key is whether the specific conduct has been clearly established as a constitutional violation." *Lincoln*, 880 F.3d at 537 (quoting *Mullenix*, 136 S.Ct. at 308) (emphasis added).

**C. Excessive Force**

In the Tenth Circuit, "[e]xcessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). However, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In *Graham*, the Supreme Court "established a balancing test to determine when the use of force to effect a seizure is unreasonable." *McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) (citing *Graham*, 490 U.S. at 396). *Graham* requires a court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quotations omitted). On balance, courts must pay "careful attention to the facts and circumstances of each particular case," which include (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also McCoy*, 887 F.3d at 1045.

7

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97. "[T]he 'reasonableness' inquiry ... is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. Put simply, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*.

Once an individual is convicted of a crime, the analysis proceeds under the Eighth Amendment. *Porro v. Barnes,* 624 F.3d 1322, 1326 (10th Cir. 2010). But "when neither the Fourth nor the Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—[courts] turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Id*. at 1326. That is, when the plaintiff is a pretrial detainee, claims of excessive force proceed under the Fifth or Fourteenth Amendment, where the appropriate standard is objective reasonableness, not a subjective standard that takes into account the officer's state of mind. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470, (2015). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 2473.

### D. Municipal Liability

A plaintiff cannot maintain a 42 U.S.C. § 1983 action on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691–94 (1978); *see also Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010). Rather, to maintain a § 1983 action against a municipality, a plaintiff must demonstrate (1) that an officer committed an underlying constitutional violation; (2) that a municipal policy or custom exists; and (3) that there is a direct causal link between the policy or custom and the constitutional violation alleged. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *see also Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

In the Tenth Circuit, a policy or custom may:

> take the form of (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions -- and the basis for them -- of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson*, 627 F.3d at 788 (internal quotations and citations omitted).

## III. UNDISPUTED FACTS

At the outset, the Court notes that Plaintiff makes several assertions in his complaint and in his response to Defendants' motion for summary judgment. Specifically, he alleges that Deputy Valdez fired shots at his vehicle and that BCSO deputies, including Defendant Hayworth, continued to use force against him even after they placed him in handcuffs. Pl.'s Resp. 1. Moreover, in his complaint, Plaintiff includes a page titled "Affidavit #1" in which he makes the same allegations. *See* Pl.'s Compl. 1. These allegations fall short of creating a fact issue for

several reasons. First, Plaintiff's "Affidavit" was not made under penalty of perjury and cannot transform into admissible record evidence with the mere inclusion of a title.[6] Second, under Rule 56 of the Federal Rules of Civil Procedure, a party attempting to controvert a fact must do so by "citing to particular parts of materials in the record." Fed. R. Civ. P. 15(c)(1)(A). This District's local rules also require that, in a memorandum opposing summary judgment, "[e]ach fact in dispute must be numbered, must refer with particularity by paragraph, to those portions of the record upon which the non-movant relies and must state the number of the movant's fact that is disputed." D.N.M.LR-Civ. 56(b). It is also well known that a Court cannot advocate for a pro se litigant and cannot do the work for him. *See Hall*, 935 F.2d at 1110.

Therefore, the Court finds the following facts to be deemed admitted for purposes of Defendants' motion:

1. On March 3, 2015, Bernalillo County deputies were dispatched to a suspicious vehicle, a white van, located at 4104 Barcelona SW. Defs.' Mot. Summ. J. Ex. A.

2. A male subject was seen in the rear of the van and, upon deputies' knocking on the window, he started the van and fled the scene in an aggressive manner. *Id*.

3. APD's Air One unit located the vehicle and told deputies that the vehicle was traveling west on Muniz at which time deputies responded to the area. *Id*.

4. The van was located traveling west on Copeland and deputies followed it until it reached a dead end at the far west side of Copeland. *Id*. Ex. D.

---

[6] *See* 28 U.S.C. § 1746 (unsworn declaration must state "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)" to carry same force and effect as sworn declaration or affidavit made pursuant to law); *see also McMiller v. Corr. Corp. of Am.*, 695 F. App'x 344, 346 (10th Cir. 2017) ("28 U.S.C. § 1746 allows a written unsworn declaration[s] . . . *subscribed in proper form* as true under penalty of perjury to substitute for an affidavit." (emphasis added)).

5. At that time, a deputy got out of his patrol car and started giving commands to a male subject that was in another vehicle near the van. *Id*. The male subject then ran back to the van, started it, and reversed east on Copeland at a high rate of speed. *Id*.

6. The van struck a fence on the north side of Copeland. *Id*. The van then accelerated and drove east on Copeland where two other law enforcement vehicles were driving into the area. *Id*.

7. A deputy had to take evasive maneuvers to avoid being hit by the van. *Id*.

8. The van turned east on Muniz from Copeland at a high rate of speed and was being driven recklessly. *Id*.

9. Deputies pursued the van east on Muniz, then north on Isleta until it crashed near 3555 Isleta Blvd SW. *Id*.

10. Plaintiff, the driver of the van, fled on foot. Defs.' Mot. Summ. J. Exs. B pg. 3, C pg. 4

11. Material fact number 11 is the only fact Plaintiff points to in the admissible record evidence to dispute Defendants' assertion that he actively resisted arrest. Plaintiff relies on video evidence [Defs.' Mot. Summ. J. Ex. D] for his assertion that "he complied and surrendered to officers" by "put[ting] hands up" and getting on his "knees." Pl.'s Resp. 2. The Court, however, finds that Plaintiff's account of events is inconsistent with the video submitted into evidence. Consequently, Material Fact 11—that Plaintiff actively resisted his apprehension—is deemed uncontroverted. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (reversing denial of qualified immunity based on disputed facts where video evidence of car chase blatantly contradicted plaintiff's account of events).

12. Deputy Hix delivered a softening blow to Plaintiff's left thigh to gain compliance. At that point, Plaintiff allowed a deputy to pull his left arm out from under him. *Id*. Plaintiff

nonetheless tried to roll away from Deputy Hix's side of control as deputies attempted to get Plaintiff's wrists close enough to each other to apply handcuffs. *Id*.

13. Deputy Hix observed Plaintiff turn and look at Deputy Hix's side of control while continuing to resist. *Id*. As a distraction technique, Deputy Hix utilized a lateral head displacement to keep Plaintiff from planning actions to counter or defeat his handcuffing. *Id*. At this point, deputies were able to place handcuffs on the suspect. *Id*.

14. The interaction was captured on video from the APD's Air One unit. *See* Defs.' Mot. Summ. J. Ex. D.

15. Medical personnel were called to the scene to evaluate the minor injuries that Plaintiff sustained as a result of the vehicle stop and the altercation with deputies. *Id*. Ex. C. Plaintiff was transported to the hospital for further evaluation and treated for minor injuries, after which he was taken to jail. *Id*.

## IV. ANALYSIS

Applying the governing principles of law to the undisputed material facts of this case, the Court recommends that Defendants be granted judgment as a matter of law on Plaintiff's Fourth Amendment Claims. The "Affidavit" that Plaintiff submitted falls well short of the quantum necessary for him to create a fact issue as to whether the individual capacity Defendants violated his Fourth Amendment rights or whether they violated clearly established law. *See supra* pg. 10 n.6. Further, Plaintiff failed to create a fact issue as to whether BCSO could be held liable as a municipality. The Court also recommends that allowing Plaintiff to amend his complaint would be futile. To finish, the Court recommends that Defendants' motion to stay should be denied as moot.

The Court's analysis will proceed in three steps. First, the Court considers Defendants' Motion for Summary Judgment and whether the undisputed facts demonstrate that they are entitled to judgment as a matter of law. Next, the Court analyzes Plaintiff's Motion to Amend Pleadings. Lastly, the Court examines Defendants' Motion to Stay.

**A. Defendants' Motion for Summary Judgment**

Defendants Valdez, Marinelarena, Madrid, and Hayworth argue they are entitled to summary judgement because Plaintiff failed to identify specific acts committed by each Defendant that would subject each to liability. They further argue that the amount of force used to effectuate the arrest was reasonable. In addition and in the alternative, the individual defendants contend that they are entitled to qualified immunity. Defendant BCSO maintains that Plaintiff's failure to point to admissible evidence that would establish a policy or custom encouraging or condoning the use of excessive force is fatal to his theory of municipal liability.

*1. Defendants Valdez, Marinelarena, Madrid, and Hayworth*

Defendants contend that Plaintiff has not shown that each Defendant personally violated his Fourth Amendment rights. With regard to Defendants Marinelarena, Madrid, Hayworth, and Valdez, the Court agrees. "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Langley v. Adams Cty., Colo.*, 987 F.2d 1473, 1479 (10th Cir. 1993) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Individual liability under § 1983 must be premised on *specific actions* by a defendant that resulted in a deprivation of the plaintiff's constitutional rights. *Id*. Plaintiff fails to make specific allegations that Defendants Madrid or Marinelarena used any level of force during the high-speed pursuit or the effort to subdue him.

The undisputed facts make no mention of Defendant Marinelarena, nor do they establish that Defendant Madrid or Hayworth personally used force against Plaintiff. Without more than conclusory statements made in the complaint and Plaintiff's response to Defendants' motion for summary judgment, the Court cannot find that Plaintiff has raised a material issue concerning the use of force by Defendants Marinelarena, Madrid, or Hayworth. *See Llewellyn*, 711 F.3d at 1180. Further, when the evidence fails to establish that Defendants Marinelarena, Madrid, or Hayworth used any force, Plaintiff cannot demonstrate a Fourth Amendment violation as a matter of law. Therefore, the Court recommends granting summary judgment in favor of Defendants Marinelarena, Madrid, and Hayworth.

The same analysis applies to Defendant Valdez. While it may be true that Plaintiff asserts that Defendant Valdez fired shots at the van during the high-speed pursuit, he fails to support that assertion by pointing to admissible evidence in the record. Defendants sumitted admissible evidence that would establish Defendant Valdez fired shots at the van [Defs.' Mot. Summ. J. Exs. B, C], but this Court cannot assume the role of advocate on behalf of Plaintiff. *See Hall,* 935 F.2d at 1110. "[It]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir.1978)); *see also Mitchell v. Kansas City Kansas Sch. Dist.,* 714 F. App'x 884, 886 (10th Cir. 2017) (unpublished) (quoting *Cross*, 390 F.3d at 1290); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). Aside from simply alleging that Valdez fired shots, Plaintiff has presented this Court with absolutely no other facts regarding this incident. Thus, as Plaintiff has not cited to any facts in the record that support his claim that the

shots fired by Valdez might constitute an excessive use of force, the Court recommends summary judgment be granted in favor of Defendant Valdez.

Importantly, this Court's recommendation regarding these four Defendants should not be read to suggest that force was not used against Plaintiff during his apprehension or that Plaintiff was required at this stage to affirmatively refute Defendants' evidence and prove that the force used was unreasonable. Rather, this Court concludes only that Plaintiff has failed to come forward with admissible record evidence to rebut the reports and video offered by Defendants and has failed to identify specific action taken by any named Defendants. Having decided that Plaintiff has not established a genuine issue of material fact, the Court cannot conclude that Defendants Valdez, Marinelarena, Madrid, and Hayworth used unreasonable force. The Court, therefore, is constrained to recommend that the individual defendants be granted judgment as a matter of law.[7]

   2. *Defendant BCSO*

Defendant BCSO argues that Plaintiff failed to point to admissible record evidence sufficient to establish a policy or custom condoning or encouraging the use of excessive force. Plaintiff responds that the BCSO's failure to require deputies to wear lapel cameras establishes a widespread custom or policy of excessive force. As noted above, for municipal liability to attach in a § 1983 action, a plaintiff must demonstrate (1) that an officer committed an underlying constitutional violation; (2) that a municipal policy or custom exists; and (3) that there is a direct causal link between the policy or custom and the constitutional violation alleged. *See Graves*, 450 F.3d at 1218. Plaintiff cannot establish the first element. As discussed above, there is no fact issue as to whether a named defendant committed a constitutional violation, and without an underlying violation, a municipal liability claim fails as a matter of law. *See Jiron v. City of Lakewood*, 392

---

[7] Because of this resolution, the Court does not reach the question of qualified immunity.

F.3d 410, 419 (10th Cir. 2004) ("a municipality cannot be liable under § 1983 if the officer in fact inflicted no constitutional harm") (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)); *see also Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).

In addition, Plaintiff has failed to satisfy the third element, for he has failed to point to any admissible evidence in the record that would even begin to establish a causal link between the BCSO's policy against the use of lapel cameras and the excessive force that Plaintiff alleges the named deputies visited upon him.

For the reasons above, the Court recommends that summary judgment be granted in favor of BCSO.

### 3. *Common law negligence claim*

Defendants' motion fails to address Plaintiff's assertion of negligence under state law. In Plaintiff's complaint, he alleged "intentional infliction of pain and suffering, psychological and emotional distress against defendants; Bernalillo County Sheriffs office (BCSO), (NEGLIGENCE) . . . ." Pl.'s Compl. 1. The complaint went on to state that "THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS STATE-LAW CLAIMS PURSUANT TO 28 U.S.C. 1367." *Id*. It is clear to this Court that the complaint alleges an additional claim beyond the constitutional claims alleging excessive force and municipal liability. While the Court is not obligated to address the claim on the merits because the claim is not addressed in the pending motion, the Court nonetheless recommends that this claim be dismissed without prejudice for the reasons that follow.

The proposed rulings set forth above would dispose of Plaintiff's § 1983 claims. The negligence claim is grounded in state law, however, and no diversity jurisdiction is alleged or

apparent. Consequently, the Court would have only supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367. Section 1367, however, allows a court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice—that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). In accordance with this general rule, the Court recommends that the district judge decline to exercise supplemental jurisdiction and dismiss Plaintiff's negligence claim without prejudice.

**B. Plaintiff's Motion to Amend Pleadings**

On September 10, 2018, approximately 18 months after filing the orginal complaint, Plaintiff filed a motion for leave to amend his complaint to add Deputy Donnie Hix as a defendant.[8] Defendants oppose the motion for two reasons. First, they argue that Plaintiff's failure to comply with D.N.M.LR-Civ. 15.1 warrants denial of the motion. Next, Defendants oppose amendment on futility grounds and maintain that the applicable statute of limitations bars any additional claim relating to the March 3, 2015, incident. The Court agrees with Defendants that the applicable

---

[8] The parties had also engaged in more than eight months of discovery by the time Plaintiff moved to amend his complaint. *See* EFC No. 25.

17

statute of limitations bars any claim against Deputy Hix and that allowing leave would be futile. Thus, the Court recommends that Plaintiff's Motion to Amend be denied.

To begin, the local rules of this district require "[a] proposed amendment to a pleading [to] accompany the motion to amend." D.N.M.LR-Civ. 15.1. Additionally, Federal Rule of Civil Procedure 15 provides in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).[9] A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile." *Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv.*, 175 F.3d 848, 859 (10th Cir. 1999). An amendment is futile "[when] a complaint, as amended, would be subject to dismissal . . . ." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (quoting *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1389 (10th Cir. 1980). A court may also deny leave to amend "upon a showing of undue delay . . . ." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).

Further, the statute of limitations for a § 1983 claim in New Mexico is three years. N.M. Stat. Ann. § 37-1-8; *see Schrader v. Richardson*, 461 F. App'x 657, 660 (10th Cir. 2012) (unpublished); *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that the statute of limitations in § 1983 claims is governed by state law, and that New Mexico allows only three years for the filing of claims) (superseded by statute on other grounds).

---

[9] Federal Rule of Civil Procedure 16 should govern Plaintiff's Motion to Amend since this Court entered a scheduling order [ECF No. 21] on November 21, 2017. *See Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009). The Defendants, however, have not argued for the more stringent standard and applying Rule 15 does not change this Court's recommendation.

Turning to the instant case, Plaintiff seeks leave to add Deputy Donnie Hix as a defendant in this action. Plaintiff moved to amend on September 10, 2018, approximately eighteen months after filing the complaint on February 27, 2017, and more than three-and-a-half years after the March 3, 2015, incident. As Defendants correctly point out, New Mexico's three-year statute of limitations bars suit against Deputy Hix making the proposed amendment futile.[10] Consequently, this Court recommends that Plaintiff's motion to amend be denied as futile.[11]

### C. Defendants' Motion to Stay

With the above proposed recommendations, Defendants' motion to stay becomes moot because no live controversy would remain between the parties. Therefore, the Court recommends the motion be denied as moot.

## V. CONCLUSION

No genuine dispute exists as to whether Defendants Valdez, Marinelarena, Madrid, and Hayworth used excessive force or that Defendant BCSO is subject to municipal liability, and therefore, Rule 56 entitles all Defendants to judgment as a matter of law. The Court **THEREFORE RECOMMENDS:**

(1) summary judgment be **GRANTED** to Defendants;

(2) Plaintiff's Fourth Amendment claim be **DISMISSED WITH PREJUDICE**;

(3) Plaintiff's state law claim be **DISMISSED WITHOUT PREJUDICE**;

(4) Plaintiff's Motion to Amend Pleadings be **DENIED**; and

(3) Defendant's Motion to Stay be **DENIED AS MOOT**.

---

[10] Plaintiff does not argue that any claims against Deputy Hix would relate back pursuant to Federal Rule of Civil Procedure 15(c).

[11] Because of its recommended resolution, the Court need not address Defendants' D.N.M.LR-Civ. 15.1 argument.

**IT IS SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**